Di Cristina, Plaintiff and Appellee, *v.* Porto Rico Commercial Company, Defendant and Appellant.

Appeal from the District Court of Mayagüez in an Action for Rescission of Contract and Damages.

No. 2577.—Decided July 28, 1922.

Purchase and Sale—Guaranty—Agreement to Repair—Contract.—The following clause was contained in a contract for the sale of a truck: "This truck will be repaired free of charge wherever it gets out of order and any defective part will be replaced gratis." *Held:* That the promise made in the first part is general and is not limited by the second part to repairs due only to defects of manufacture.

Id.—Id.—Id.—Restitution.—A truck having been sold with an agreement to repair it free of charge and the vendor having failed to comply with the agreement, a judgment that the vendor shall take back the truck and return to the vendee the amount paid on account is correct.

The facts are stated in the opinion.

*Mr. J. Sifre, Jr.,* for the appellant.

*Messrs. Benet & Souffront* for the appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This was an action for the rescission of a contract and for damages.

In September, 1919, the plaintiff purchased a truck from the defendant, the latter agreeing to the following, as copied literally from the contract: "This truck will be repaired free of charge wherever it may get out of order, and any·

defective part will be replaced gratis.'' In the middle of December of 1919 the truck showed defects. The defendant was notified and did not repair them. In the following March the plaintiff brought this action. The defendant answered that its obligation was limited to making the repairs neces sary by reason of defects of manufacture that might be found in the truck and that this was not the case. After trial the district court rendered judgment for the plaintiff, whereupon the defendant appealed to this court.

The appellant assigns in its brief the following errors: 1. That committed in construing the contract; 2, that committed in declaring its rescission; 3, that committed in sustaining the claim for damages.

1. In arguing the first assignment of error the appellant proceeds in its brief as follow:

''Upon the construction given to the following clause of the contract undoubtedly depends the decision of this case in favor or against the appellant. It seems to be the axis around which revolve all of the other questions raised in the case; therefore, we shall argue it first and perhaps exhaustively.

''The clause in question reads literally as follows:

'' 'This truck will be repaired free of charge wherever it may get out of order, and any defective part will be replaced gratis.'

'' As may be seen, this clause is composed of two sentences joined by a copulative conjunction, and thus they form a single paragraph.

''Is the second sentence a repetition, modification or limitation of the first, or a variation or difference?

''We think it may mean a repetition and limitation; because from the words themselves is deduced the intention to repair free of charge, and immediately the replacement of defective parts is spoken of, making it understood that the vendor was limited to repairing the truck by replacing such parts as were defective in their manufacture.

''The idea expressed in the first sentence is repeated in different words, which indicate and express it more exactly. What does the corporation agree to repair? How is the corporation to make these repairs?

''Did the corporation possibly agree to repair the said truck

free of charge wherever it got out of order without any limitation as to the nature of the repairs?

"It seems an absurdity to place such a construction on this clause, for that would be equivalent to binding the corporation *ad perpetuam* to repair the said truck whatever might be the cause of its getting out of order: whether a collision or the natural wear and tear, and even its abuse or the negligence of the purchaser, etc.

"To maintain that such was the intention of the seller, a corporation engaged in the sale of automobiles which must be supposed to have at least some experience in general business and particularly in the business in which it is engaged, is simply to accept an absurdity and ignore the spirit of our commercial life.

"On the contrary, to maintain, as we do, that by a correct interpretation of this clause the corporation only agreed to repair the truck wherever it should get out of order due to defects of manufacture, and to replace the defective parts that caused the disarrangement, is logical and what all automobile sellers may bind themselves to do without being threatened with ruin and is a general clause in almost every contract of this kind. In the present case it is shown by the unity of the paragraph, the testimony of the plaintiff himself and the opinion of authorities which we cite as follows:

" 'As between two constructions, each probable, one of which makes the contract fair and reasonable and other of which makes it unfair and unreasonable, the former should always be preferred.' 2 Page on Contracts, 1742.

"We will quote from 6 R. C. L., Contracts, sec. 230, p. 841:

" 'Contracts must receive a reasonable interpretation, according to the intention of the parties and the time of executing them, if that intention can be ascertained from their language. Where the language of a contract is contradictory, obscure or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred. If one construction would make it unreasonable, while another *would do justice to* both parties, *the latter will be adopted.*'

"The theory that we sustain as to the interpretation of this clause is strengthened also by the testimony of the plaintiff who, upon

being asked by his attorney whether he made any objections to the purchase of the truck when it was offered to him for sale, answered:

" 'I did not want to purchase it because it was a make of truck not known here and fearing that it might be defective, or something else, I did not care to purchase it until they agreed to repair the truck wherever *it got out of order,* for the account of the company.' (Page 3 of the transcript of the evidence.)

"This shows that both the buyer and the seller had in mind only the defects that the truck might originally have, and that the seller offered to repair such defects without any expense to the buyer.

"Our contention is also corroborated by the testimony of Manuel Matteo, a witness for the plaintiff who was present when the sale was made. To the question by plaintiff's attorney, 'What was the transaction—what was said?' he replied: 'That they would replace any broken part of the truck for the account of the company.' "

This is the appellant's case as presented. The reasoning is logical, but, in our opinion, it does not destroy the conclusion at which the trial court arrived. The contract is so clear that it is not susceptible of any different interpretation; therefore, the jurisprudence cited is not applicable: "This truck will be repaired free of charge wherever it may get out of order" is such a concise promise, made in such positive terms and current language, that any person of common intelligence would decide without mental effort that it referred to all cases. After this there is a comma and then it reads that "any defective part will be replaced gratis," a new promise which, although connected with the preceding one and of a similar nature, is independent in itself and can not be interpreted as limiting the first.

The appellant says that the clause is usual in this class of contracts, but has cited no jurisprudence interpreting a similar clause. Considering the contract as a whole, we incline to the belief that this is not a common clause. At the foot of the document are the conditions accepted by the National Association of Automobile Manufacturers and none of them contains a similar clause. The evidence shows that

the defendant was very anxious to sell the truck. It was of a new make for which a market was desired to be found and only this can explain why the seller assumed such broad and unusual responsibility.

Besides, a careful examination of the evidence shows that the truck was sold in September, 1919, and did not run well from the first. Small repairs were made by the defendant, but finally a part was broken that could not be replaced in Mayagüez and the truck became entirely unserviceable.

The transcript of the record contains copies of letters and telegrams exchanged between the parties. Some of these bear no dates, but connecting them according to their contents it may be concluded that the plaintiff asked the defendant for a part to replace the broken one and the defendant answered that it had none in stock, but would order it by cable; that the defendant made a mistake in the order; that several months elapsed and the part was not supplied and no reasonable explanation was given, whereupon the plaintiff filed his action in the district court.

The defendant maintains that it was not bound to supply the part, because, in accordance with the interpretation that it places upon the contract, it was so bound only when the defects were of manufacture, and here no such thing was shown. Aside from the interpretation that the defendant actually placed upon the contract in admitting that it was its duty to furnish the plaintiff with the part that he asked for, we think that the evidence contains data sufficient to warrant the conclusion that the part of the truck referred to was really defective and therefore that, even accepting the defendant's own interpretation, the conclusion is that it did not live up to the promise made in the contract.

The truck was new. It worked only a few months. It got out of order on several occasions, as we have said. Bascarán, the chauffeur who first drove it, said that on one

trip two valves had been broken. Later the plaintiff engaged another chauffeur and one day Bascarán saw that "the motor would not run and, according to the explanation given to me by the chauffeur, it had a broken *rosverin* (roller bearing?); that since then I never saw it work again." Altiery, a mechanic, referring to parts of the truck which were taken to him for repair, said: "They were bad, broken * * * ," and that they were broken because "the material of the parts was very weak." Finally be referred to the roller bearing and said that this part was not repaired because in Porto Rico there was no material for that purpose.

2. The truck was sold with the obligation to repair it. The price was $3,000. The plaintiff had paid $1,700. As the truck has become unserviceable, and considering the inability of the defendant to perform its obligation, it seems clear that the plaintiff is entitled at least to claim that the defendant shall take back its truck and refund to him the money received on account of its price. This was what the trial court adjudged on this point.

3. As regard the allowance of damages, we think that the pronouncement of the judgment that the defendant shall pay to the plaintiff the sum of $1,800 as for the earnings failed to be obtained because of the impossibility of using the truck, the said earnings being estimated at the rate of $30 net a day, is not supported by the evidence. We have examined the evidence carefully and do not understand how this conclusion could have been reached.

By virtue of the foregoing we are of the opinion that the judgment appealed from should be affirmed with the exception of the part allowing damages, which should be reversed.

*Affirmed in part.*

Justices Aldrey, Hutchison and Franco Soto concurred.

Mr. Justice Wolf took no part in the decision of this case.